The next matter, number 221192, United States v. John Michael Rathbun. At this time, would the appellant's counsel please introduce herself on the record to begin? Good morning, Your Honors. May it please the Court, Judith Meisner representing Mr. Rathbun. May I reserve two minutes for rebuttal? Yes, you may, Ms. Meisner. Thank you. John Rathbun was tried twice on charges arising from the discovery of a fuel container with gasoline and a charred paper wick on the grass near a driveway entrance to the Jewish Geriatric Services Campus on Converse Street in Longmeadow, Massachusetts, on the morning of April 2, 2020. The wick was pages from a religious tract published by the Billy Graham Evangelistic Association. There was a hung jury for the first trial. Mr. Rathbun was convicted at the second trial. Now, while there were government insinuations of anti-Semitism from the outset of the case, there was no evidence of it. The government initially obtained an indictment with a special finding that Mr. Rathbun intentionally selected Jewish Geriatric Services as the object of the offenses because of actual or perceived religious identity. The government dismissed that special finding before trial, before the first trial, admitting that it had no evidence linking Mr. Rathbun to any online anti-Semitic activity and no evidence of any sort linking him to anti-Semitic activity or expression. Notwithstanding the absence of any evidence that the offenses were motivated by anti-Semitism or any religious bias, that theme permeated the government's case. The combined impact of the testimony from two witnesses... Well, did the theme of bias permeate the case or did the theme of the facts of what they are? The device was found where it was found and the fuel container was stuffed with what it was stuffed. That's information that's just part of the factual scenario of the crime. Yes, Your Honor. It is part of the factual scenario of the crime, but the question is the emphasis that the government placed upon it and the need for the more extensive testimony provided. Ms. Meisner, from your answer, I assume that you're referring to the closing arguments rather than the admission of the evidence. Could you clarify exactly what your point is? I'm talking about the admission of the evidence, the testimony of Chaim Kosofsky. Okay, so how is it an abuse of discretion to pick up Judge Thompson's point to introduce that factual evidence? The evidence that Chaim Kosofsky was called for, according to the government, was to provide information about the population in the area. And he lived across the street from the driveway entrance to the Jewish geriatric service campus. The population and the activity, he was way more specific than the other testifying witnesses about what kind of daily activity occurred in that area, way more so than the other witnesses who testified. But that testimony was available from other witnesses. But the government doesn't have to skip calling the one witness who's across the street just because of the religion that that witness practices. Suggesting that in this particular case, the need for him to testify was outweighed by the other witnesses. The risk of prejudice from the fact that he was a rabbi. He testified about his teaching at a Jewish school, providing services to people at the Jewish geriatric service complex. And the... But there were other people in that area as well. Sure, but the government's got several witnesses. One is right across the street. In any event, why do they say, sorry, we can't use you because you're Jewish? No, it's because in this particular case, there was a potential for prejudice from the testimony of the rabbi that didn't exist. If you had testimony from other witnesses who were not Jewish. It's a case specific argument. It's not saying that Jewish people cannot ever testify if they live in an area. But here, because of... Did you offer to, I'm sorry, your appellate counsel, did the trial defense counsel offer to stipulate that the witness who lived across the street would testify as he did? I'm sorry, Your Honor, that Chaim Kasofsky would testify? You're saying they should have called the other witnesses instead of the rabbi? Yes. And you have been told, well, the government is not precluded from calling witnesses because of the religion of that witness. And it strikes me that defense counsel could have stipulated to what the testimony was from the occupant of the house directly across the street from where the firebomb Molotov cocktail was located. There was no such offer, am I correct? There was no stipulation, but that testimony similar to what he offered had already been introduced. You had a patrol officer who, for nine months, patrolled that area, the midnight to 8th shift, which would be the time frame that is being discussed here. And there could have been, if the government felt a need for additional evidence about the nature of the area or the location of the firebomb Molotov or the population, that witness could have been examined more fully. Had the government not called him, I could just imagine a closing argument by defense counsel saying that here the person who would have been in the best position to observe what was going on in the area, the guy who lived right across the street, the government with the burden of proof, didn't even bother to call him. Well, there was no argument that the government didn't call the witness who actually observed what was going on in the area.